# Authority of the United States Olympic Committee to Send American Teams to the 1980 Summer Olympics

The Amateur Sports Act of 1978, 36 U.S.C. § 371 *et seq.*, does not compel the United States Olympic Committee to send American teams to any Olympics.

The United States Olympic Committee may withdraw its delegation at any time before final entries are made.

The Amateur Sports Act of 1978, 36 U.S.C. § 371 *et seq.*, does not create any substantive right in an individual athlete to participate in a particular Olympic.

April 10, 1980

THE PRESIDENT

MY DEAR MR. PRESIDENT: You have requested my opinion on the question whether the United States Olympic Committee (USOC) has a legal duty, under the Amateur Sports Act of 1978, 36 U.S.C. § 371 *et seq.*, to send a team of American athletes to the Summer Olympic Games in Moscow. For reasons stated below, it is my opinion that no tenable argument can be made that the USOC is required to send an American team to the Moscow Games. To the contrary, I believe that the Amateur Sports Act gives the USOC discretion not to send a team to any particular Olympic Games, including the Moscow Games.

There would appear to be only two conceivable bases for an argument that the USOC is legally bound to send an American team to the Moscow Games.[1] One argument might be that the Amateur Sports Act of 1978 grants no discretion to the USOC to refuse to send an American team to any particular Olympic Games no matter what the circumstances might be. Another argument would be that the Amateur Sports Act of 1978 creates in individual athletes a substantive legal right to compete in any particular Olympic Games if they otherwise qualify to compete on the basis of their performance in competition with other athletes for berths on our Olympic team. I will address each of these arguments in turn.

The Amateur Sports Act of 1978 recognized and established the USOC as a federally chartered corporation, *inter alia,* to "exercise

---

[1] We do not believe that § 202(a)(5) of the Amateur Sports Act of 1978, 36 U.S.C. § 392(a)(5), to which Counsel to the President Lloyd Cutler's letter of April 9, 1980, refers, is relevant. The Olympic Games are not conducted under the auspices of the national governing bodies and need not meet the requirements of § 202(b), 39 U.S.C. § 392(b).

exclusive jurisdiction . . . over all matters pertaining to the participation of the United States in the Olympic Games . . ." § 104(3), 36 U.S.C. § 374(3).[2] The creation of the USOC as a corporation rather than a government agency is, I believe, important to an understanding of its powers regarding the participation of an American team in any particular Olympic Games. Although the USOC does not have all the powers normally associated with a private corporation, such as the power to issue capital stock,[3] its creation as a corporation having most of the powers associated with private corporations suggests quite strongly a congressional intent to vest in it wide discretion to take any action not specifically precluded by the Amateur Sports Act of 1978.

No provision of the Amateur Sports Act of 1978 expressly precludes the USOC's making a decision not to participate in any particular Olympic Games. Nor does any provision of that Act, by implication, preclude the USOC's making such a decision. Indeed, I believe that the 1978 Act should be read to assume congressional awareness that under the rules of the International Olympic Committee (IOC), national Olympic committees established by countries to represent them on the IOC could decide not to participate in any particular Olympic Games. For example, in 1976 numerous African nations through their respective Olympic bodies declined to send teams to or withdrew teams from the Summer Games in Montreal. Congress may be charged, I believe, with enacting the 1978 Act with that recent history in mind. In addition, there is no sanction if a delegation withdraws before "final entries" have been made.[4] Moreover, the current IOC bylaws state that national Olympic committees such as the USOC—

> shall organize and supervise their country's representation
> at the Olympic Games. Representation covers the decision
> to participate . . . .[5]

Given that § 105(a)(2) of the Amateur Sports Act of 1978, 36 U.S.C. § 375(a)(2), establishes the power of the USOC to "represent the United States as its national Olympic committee in relations with the International Olympic Committee," I believe that Congress intended in enacting that Act that the USOC would be empowered to decide not to participate in any particular Olympic Games.

Under my analysis above, I believe the argument that the 1978 Act created substantive legal rights in individual athletes to participate in

---

[2] Under § 105(a)(3), 36 U.S.C. § 375 (a)(3), the USOC is empowered to "organize, finance, and control the representation of the United States in the competitions and events of the Olympic Games. . . ."

[3] 36 U.S.C. § 378.

[4] Rule 25 of the Rules of the International Olympic Committee (1979) (IOC Rule). Although "final entries" is not defined, it appears to refer to the entry form containing the names and numbers of competitors which must be submitted to the Organizing Committee of the Olympic Games no later than 10 days before the relevant Olympic competitions begin. IOC Rule 36, ¶ 4; Bylaw V, ¶ 8 to IOC Rule 24.

[5] Bylaw V, ¶ 7, to IOC Rule 24.

any particular Olympic Games may be disposed of summarily. Under § 114 of the Act, 36 U.S.C. § 382(b), the USOC "shall establish and maintain provisions for the swift and equitable resolution of disputes involving any of its members *and* relating to the opportunity of an amateur athlete . . . to participate in the Olympic Games . . . ." (Emphasis added.) Although it might be argued that Art. IX, § 1 of the USOC Constitution,[6] read literally, suggests the existence of a right of individual athletes to participate in particular Olympic Games "if selected," the language of § 114 and its legislative history contradict the suggestion that this "right" was to be viewed as a substantive restriction on the USOC's power to make the participation decision. Thus, while the report issued by the Senate committee recognized a "right to take part in the Olympic Games," the context in which that "right" was described demonstrates that Congress' concern in § 114 was to prevent athletes from being "used as pawns by one organization to gain advantage over another." S. Rep. No. 770, 95th Cong., 2d Sess. 6 (1978).[7] See also H.R. Rep. No. 1627, 95th Cong., 2d Sess. 15 (1978).

In view of the historical understanding and practice regarding the power of national Olympic committees to make participation decisions, and given that no provision of the Amateur Sports Act of 1978 expressly or implicitly qualified that understanding, I do not believe that a tenable argument can be made that the USOC is required by law to send an American team to the Moscow Games. In reaching this conclusion, I do not mean to suggest that Congress could not, by statute, accomplish that end or otherwise dictate the course the USOC is to follow in this matter. I merely conclude that in enacting the 1978 Act, Congress implicitly recognized the preexisting understanding that the USOC, as our country's national Olympic committee, would have the power to make a decision whether to participate in particular Olympic Games.

Sincerely,

BENJAMIN R. CIVILETTI

---

[6] No member of the USOC may deny or threaten to deny any amateur athlete the opportunity to compete in the Olympic Games, the Pan-American Games, a world championship competition, or other such protected competition as defined in Article I, § 2(g); nor may any member, subsequent to such competition, censure, or otherwise penalize, (a) any such athlete who participates in such competition, or (b) any organization which the athlete represents. The USOC shall, by all lawful means at its disposal, protect the right of an amateur athlete to participate if selected (or to attempt to qualify for selection to participate) as an athlete representing the United States in any of the aforesaid competitions.

[7] Even if § 114 were viewed as granting a substantive right to "selected" athletes to participate in any particular Olympic Games, the legislative history of that provision indicates that the right conferred would be limited to protection from "an arbitrary rule which, in its application, restricts, for no real purpose, an athlete's opportunity to compete." S. Rep. No. 770, at 6.

10